UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION


DAVID EARL CARR,

      Plaintiff,                        Civil Action No. 16-00070

v.                                 HON. WILLIAM L. CAMPBELL, JR.
                                     U.S. District Judge
                                     HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,


      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff David Earl Carr ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act.   On April 24, 2017, Plaintiff filed a Motion for Judgment [Docket #17].   On January 30, 2018, the case was assigned to the undersigned pursuant to 28 U.S.C. § 636 for a Report and Recommendation.  For the reasons set forth below, I recommend that Plaintiff's Motion [Docket #17] be DENIED.

## I.  PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on October 30, 2012,  alleging disability as of June

30, 2010 (Tr. 186, 190). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on April 27, 2015 (Tr. 35). Administrative Law Judge ("ALJ") Jim Beeby presided. Plaintiff, represented by non-attorney representative Agnes Foss, testified by teleconference (Tr. 17, 39-55). Vocational Expert ("VE") J.D. Flynn also testified (Tr. 56-59). On May 7, 2015, ALJ Beeby found that Plaintiff was capable of returning to his past relevant work as a plant manager (Tr. 17-30). On July 21, 2016, the Appeals Council denied review (Tr. 1-4). Plaintiff filed for judicial review of the final decision on September 19, 2016.

## II. BACKGROUND FACTS

Plaintiff, born April 6, 1960, was 55 when ALJ Beeby issued his decision (Tr. 30, 186). He completed high school and took a course in computer design (Tr. 228). He worked previously as an assembler, department lead, die repairman, foreman, inspector, machinist, parts inspector, plant manager, and press operator (Tr. 229). His application for benefits alleges disability resulting from leg pain, arthritis, chronic fatigue, and hip and breathing problems (Tr. 227).

### A.    Plaintiff's Testimony

Plaintiff offered the following testimony:

Plaintiff, divorced, lived in a single family home with his mother (Tr. 39-40). He held a driver's license (Tr. 40). At the time of hearing, he was not working and did not have any income (Tr. 41). His former work as a plant manager entailed overseeing personnel activity,

-2-

scheduling, other administrative duties, and "hiring and firing" (Tr. 43).

Plaintiff smoked around a half pack of cigarettes and a day and drank three to four beers every afternoon (Tr. 46). He denied the use of street drugs (Tr. 46). He experienced nighttime sleep disturbances due to body pain (Tr. 46). Upon arising on a typical day, he would first make coffee, listen to the radio, feed the cat, stretch, and stand or walk (Tr. 47). He would then watch television until 9:30 a.m. when he took coffee to his elderly uncle (Tr. 47). After that, he watched "The Price is Right" with his mother, then took a nap (Tr. 47). He drove his mother to doctors' appointments every few weeks (Tr. 47-48). He spent the rest of the day watching television or listening to the radio, then eating dinner before retiring at 9:00 or 9:30 p.m. (Tr. 48). He was able to care for his personal needs, but was unable to perform household chores (Tr. 48-49).

Plaintiff was unable to walk or stand for more than 20 minutes (Tr. 49). He was unable to sit for more than 15 minutes at a time or carry more than 15 pounds on an occasional basis (Tr. 49). He was unable to work due to leg pain and pain in the bottom of his feet (Tr. 50). He experienced arthritis since a motorcycle accident in 1982 and underwent a hip replacement in 2005 (Tr. 50). He had treated in the past with a rheumatologist (Tr. 51). He also experienced fatigue and hypertension (Tr. 51-52). He was unable to undergo neurological testing due to the lack of health insurance (Tr. 51).

-3-

In response to questioning by his representative, Plaintiff reported that he used over-the-counter pain medication exclusively for body pain (Tr. 53).  He stated opiates made him nauseated (Tr. 53).  He coped with nighttime pain by taking Advil or Tylenol and sleeping on a couch (Tr. 53).  He was unable to travel by car for more than one hour due to body pain (Tr. 54).  He did not use a computer more than once every month (Tr. 54).  He was required to use a cart for support while making even short grocery shopping trips (Tr. 55).  He did not belong to any social groups (Tr. 55).  He and his mother received occasional visits from family members (Tr. 55).

### B.    Medical Evidence

#### 1. Records Related to Plaintiff's Treatment

August, 2010 treating records by Cynthia Wallace, M.D.  note Plaintiff's report of chest pain, fatigue, and congestion (Tr. 329).  A chest x-ray from the following month was unremarkable (Tr. 130).

January, 2013 records state that Plaintiff exhibited a normal gait with normal judgment, orientation, memory, and mood (Tr. 339).  He was diagnosed with uncontrolled hypertension (Tr. 339).  Treating records from later the same month state that Plaintiff continued to experience high blood pressure despite the use of Metoprolol (Tr. 345).  He denied current or chronic pain (Tr. 345).  A chest x-ray from the following month was consistent with a diagnosis of COPD (Tr. 349).  April, 2013 records note ongoing uncontrolled hypertension (Tr. 354-355).  Plaintiff reported that he had quit smoking (Tr.

354). A physical examination was otherwise normal (Tr. 354-355). Notes from the same month state that Plaintiff currently smoked a half pack of cigarettes each day and drank four beers (Tr. 358). Treating records state that respiratory testing from the same month were compromised by anemia (Tr. 371).

May, 2013 treating records by Dr. Wallace note that Plaintiff's blood pressure was currently 142/80 (Tr. 401). Notes from the following month state that Plaintiff reported that he had recently "failed" a breathing test and experienced shortness of breath walking to the mailbox (Tr. 403). Respiratory testing was consistent with mild COPD (Tr. 407, 412, 423). Plaintiff was advised to quit smoking (Tr. 412).

In July, 2013, Dr. Wallace completed a work-related abilities assessment, finding that Plaintiff was limited to lifting 10 pounds on an occasional basis and less than 10 pounds frequently (Tr. 421, 441). She found that Plaintiff was limited to sitting, standing, and walking less than two hours a day and was required to change position every 20 minutes (Tr. 421). She found that Plaintiff would be required to lie down at unpredicted times at least twice a day (Tr. 421). She limited Plaintiff to occasional postural activity and found that his manipulative abilities (except for "feeling") were limited by his medical condition (Tr. 422). She found that Plaintiff should avoid moderate exposure to temperature extremes, high humidity, and airborne hazards (Tr. 422). She precluded all exposure to perfumes, soldering material, solvents/cleaners, and chemicals (Tr. 422). She found that Plaintiff's condition would require him to miss more than four days of work each month (Tr. 422). Dr. Wallace's

treating notes from the same day state that Plaintiff felt "about the same" and continued to experienced fatigue (Tr. 437).  He demonstrated 4/5 strength in all extremities (Tr. 437).

August, 2013  records note that Plaintiff might "need a cervical MRI" but did not have insurance (Tr. 456).  September, 2013 records by neurologist Christine Dong, M.D. note that an EMG study showed mild demyelinating peripheral neuropathy of the lower extremities (Tr. 454).

An April, 2015 liver function test showed abnormal results (Tr. 466).  Treating records from the same month note that Plaintiff reported constant foot tingling but no "chronic pain" (Tr. 467).  He demonstrated a normal gait, intact judgment, and normal memory (Tr. 469).

### 2.  Non-Treating Records

In December, 2012, Matthew Higgins, M.D. performed a consultative examination on behalf of the SSA, noting a diagnosis of Reiter syndrome in 1984[1] (Tr. 333).  Plaintiff reported constant knee, back, and hand pain (Tr. 33).  He also reported fatigue and shortness of breath upon exertion (Tr. 333).  Plaintiff reported that he could lift 25 pounds "once" and 10 pounds repetitively; walk for 100 feet; stand  for 45 minutes; and sit for one hour (Tr. 333).  His blood pressure reading was 250/140 (Tr. 334).  Plaintiff demonstrated full grip

---

[1]Reiter's syndrome, more commonly known as reactive arthritis is "characterized by eye, urethra and joint inflammation."  https://www.mayoclinic.org/diseases-conditions/reactive-arthritis/symptoms-causes/syc-20354838 (last visited April 25, 2018).  "For most people, signs and symptoms come and go, eventually disappearing within 12 months." *Id.*

strength (Tr. 334). Dr. Higgins concluded that Plaintiff could lift or carry "in an eight-hour day, occasionally, 2.5 hours per day," and "sit, stand, and walk in an eight-hour day, occasionally 2.5 hours a day"(Tr. 335).

In April, 2013, Deborah Webster-Clair, M.D. performed a non-examining assessment of the physical limitations on behalf of the SSA, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 66). She found that Plaintiff could balance, stoop, kneel, and crawl frequently and climb and crouch occasionally (Tr. 67). Dr. Webster-Clair found that Plaintiff should also avoid concentrated exposure to airborne hazards (Tr. 68).

In August, 2013, Terrence Leveck, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report of hip pain, chronic bronchitis, renal insufficiency, left leg pain, and chronic fatigue (Tr. 445). Plaintiff admitted that he smoked a pack of cigarettes and drank a six pack of beer each day (Tr. 445). Dr. Leveck noted a normal gait and station with a tandem gait "performed with moderate difficulty" (Tr. 447). Dr. Leveck found that Plaintiff could sit, stand, or walk for six hours in an eight-hour workday and carry 20 pounds occasionally (Tr. 447). The same month, Linda Blazina, Ph.D. performed a consultative psychological evaluation, noting Plaintiff's endorsement of depressive symptoms (Tr. 450). He exhibited a normal thought process and full orientation (Tr. 450). She found "mildly impaired" concentrational skills (Tr. 450). Plaintiff acknowledged that he worked at his most recent job until the business closed (Tr. 451). She

-7-

found that Plaintiff's ability to concentrate was moderately impaired "due to depressive symptoms" (Tr. 452).

In September, 2013, P. Jeffrey Wright, Ph.D. performed a non-examining assessment of the alleged psychological limitations on behalf of the SSA, finding that Plaintiff experienced only mild limitation in activities of daily living, social functioning, and concentration, persistence, or pace (Tr. 96). In November, 2013, Thomas Thrush, M.D. performed a second non-examining physical assessment on behalf of the SSA, making findings identical to those by Dr. Webster-St. Clair, *above* (Tr. 98-100). He concluded that Plaintiff could return to his past relevant work as a press operator (Tr. 122).

## C. Vocational Expert

VE J. D. Flynn classified Plaintiff's past relevant work as a plant manager as exertionally light and skilled; and die setter and tool and die maker, medium/skilled[2] (Tr. 56-57). She testified that the plant manager position had transferrable "supervising" skills (Tr. 57). The ALJ then described a hypothetical individual of Plaintiff's age, education, and work background:

------

2

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

[A]ssume that this individual can lift and carry, push and pull 20 pounds occasionally and 10 pounds frequently.  With normal breaks in an eight-hour day, this individual can sit for six hours and stand and/or walk for six hours.  Can occasionally climb ladders, ropes, scaffolds, ramps and stairs.  Can occasionally crouch and frequently balance, stoop, kneel and crawl.  And can tolerate occasional exposure to fumes, odors, dusts, gases and poor ventilation.  Can this hypothetical individual perform any of the past jobs you described as actually or generally performed in the national economy? (Tr. 57).

The VE testified that the above limitations would not preclude  Plaintiff's  past relevant work as a plant manager as well as the light, unskilled work of a "fast-foods" worker (at least 1,500,000 positions in the national economy); dining room and cafeteria attendant (72,500); and cashier (1,100,000) (Tr. 57-58).  The VE stated that if the same individual "would be off task at least ten percent of the time due to pain and discomfort," all work would be precluded (Tr. 58).  The VE stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*") (Tr. 58-59).

### D.  The ALJ's Decision

Citing the medical transcript, ALJ Beeby found that while Plaintiff experienced the severe impairments of  status post right hip arthroplasty; COPD; essential hypertension; and osteoarthritis of the joints, none the impairments met or medically equaled "the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1" (Tr. 19-20).  ALJ Beeby found that the impairments of mild demyelinating peripheral neuropathy were non-severe and found only mild limitation in activities of daily living, social functioning, and concentration, persistence, or pace (Tr. 20).   The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for exertionally light work with the following additional

-9-

limitations:

> With normal breaks in an eight-hour day, he can sit for six hours, and stand
> and/or walk for six hours; can occasionally climb ladders, ropes, scaffolds,
> ramps and stairs; can occasionally crouch; can frequently balance, stoop,
> kneel, and crawl; and can tolerate occasional exposure to fumes, odors, dusts,
> gases, and poor ventilation (Tr. 20-21).

Citing the VE's testimony, the ALJ found that Plaintiff could perform his past relevant work as a plant manager "as actually and generally performed" and the light, unskilled "other" work of a fast food worker, cafeteria attendant, and cashier (Tr. 28-29, 57-58).

The ALJ discounted Plaintiff's allegations of disabling limitation. He found that Plaintiff's claim of disabling limitation resulting from COPD was undermined by his failure to use inhalers or other medication for the condition (Tr. 27). He noted that the most recent testing showed mild obstruction (Tr. 27). The ALJ according "little weight" to Dr. Wallace's July, 2013 treating opinion, noting that the findings of weakness and fatigue were based solely on Plaintiff's subjective complaints (Tr. 25). The ALJ found that the consultative and non-examining findings supported the RFC for a limited range of exertionally light work (Tr. 26-27).

### III. STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S.

389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has

-11-

the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

Plaintiff makes three arguments in favor of remand. *Plaintiff's Brief,* 11-21, *Docket #18,* Pg ID 526. First, he contends that the ALJ erred by concluding that his joint problems did not meet or medically equal a listed impairment at Step Three of the sequential analysis. *Id.* at 11. Next, he argues that the hypothetical question to the VE did not account for his full degree of limitation. *Id.* at 12-14. Finally, he contends, in effect, that the ALJ's improper rejection of Dr. Wallace's treating opinion invalidates the ultimate Step Four finding. *Id.* at 14-21.

The questions of whether Plaintiff experienced disabling joint problems and whether the ALJ erred in rejecting Dr. Wallace's opinion are at least partially dispositive of the argument regarding the vocational testimony. Accordingly, the Court will consider Plaintiff's claims of error in the following order: (1) Dr. Wallace's opinion, (2) the Step Three determination and finally, (3) the ALJ's choice of hypothetical limitations.

**A. The Treating Physician Analysis**

Plaintiff argues that the ALJ's rationale for rejecting Dr. Wallace's July, 2013 assessment is based on mis-characterizations of Dr. Wallace's treating records and the transcript as a whole. *Plaintiff's Brief* at 17-21. He argues, in effect, that the ALJ did not provide "good reasons" for discounting the treating source opinion as required by 20 C.F.R. 1527(c).

Case law and the regulations in effect at the time of Plaintiff's application require that "if the opinion of the claimant's treating physician is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2)). However, in the presence of contradicting evidence, the ALJ may reject all or a portion of the treating source's findings, *Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392 (6th Cir. 2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; SSR 96–2p, 1996 WL 374188, *5 (1996).[3] In explaining the reasons for giving less than controlling weight to the treating

---

[3]

The administration rescinded SSR 96-2p on March 27, 2017. *See Rescission of Social Security Rulings* 96-2p, 96-5p, and 06-3p, 82 FR 15263-01 (Mar. 17, 2017). Under the new rules, ALJs will weigh both treating and non-treating medical evaluations based on how well they are supported by the remainder of the record. 20 C.F.R. §§ 404.1520b; 416.920c. The "new rules, however, apply only to claims filed on or after March 17, 2017." *Hancock v. CSS*, 2017 WL 2838237, at *8 (W.D.Mich. July 3, 2017)(*citing Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01 (Jan 18, 2017)).

physician's opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) the "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544.

The ALJ gave "little weight" to Dr. Wallace's July, 2013 opinion that Plaintiff was unable to perform even sedentary work (Tr. 25). The ALJ, noting that the assessment consisted of "an attorney supplied check the box," observed that while Dr. Wallace found extreme workplace limitations, she did not offer a diagnosis other than "muscle weakness and fatigue" (Tr. 25 *citing* 421). The ALJ noted that although the assessment reflected "totally disabling symptoms," none of the treating records indicates that Plaintiff received physical restrictions (Tr. 25). The ALJ observed that the findings of "muscle weakness and fatigue" were not based on objective testing, adding that after Dr. Wallace completed the assessment, Plaintiff did not return to Dr. Wallace for further treatment (Tr. 25). The ALJ noted that June, 2013 pulmonary function testing showed only mild obstruction (Tr. 25). He also noted that Dr. Wallace's treating records stated "essentially normal findings" (Tr. 26). The ALJ noted that Plaintiff's 2012 admission that he could "cut lawns" undermined Dr. Wallace's opinion of disability (Tr. 26). The ALJ noted that Dr. Wallace's opinion stood at odds with Dr. Higgins and Dr. Leveck's "essentially normal [consultative] examination

Because current Plaintiff filed his claim well before March 17, 2017, SSR 96-2p applies.

-14-

results" (Tr. 26). Finally, the ALJ noted "significant gaps" in Plaintiff's medical treatment since September, 2013 (Tr. 26).

None of Plaintiff's criticisms of the treating physician's analysis provides grounds for remand. The ALJ's observation that Dr. Wallace's treating records do not show physical restrictions, despite her findings in the "check the box" assessment, is a valid basis to discount the treating opinion. *See Daniels v. Commissioner of Social Security*, 2018 WL 1535396, at *7 (E.D.Mich. March 29, 2018)(Davis, MJ)(*citing Ashley v. Commissioner of Social Security*, 2014 WL 1052357, at *8 fn.6 (W.D. Mich. Mar. 19, 2014)("'Courts have increasingly questioned the evidentiary value of multiple choice or check-off opinion forms completed by treating physicians which are not supported by clinical records'") (punctuation omitted). Plaintiff is correct that over the course of treatment, Dr. Wallace would not have been expected to impose "workplace" restrictions on an unemployed patient. However, given the presence of "disabling" symptoms, it is not unreasonable to question why Dr. Wallace would not have imposed restrictions in non-work activities, *e.g.* driving, yard work, strenuous activity in the months preceding the disability opinion. Likewise, the ALJ did not err in noting that Plaintiff's failure to seek further treatment from Dr. Wallace after obtaining the disability opinion undermined the allegations of disability. While Plaintiff asserts that the lack of treatment records are attributable to monetary limitations, the records created in the months prior to July, 2013 show that he was able to procure treatment and medication despite his financial limitations. The ALJ's inference that Plaintiff lacked motivation to

-15-

continue treatment after obtaining a disability opinion is not unreasonable.

While Plaintiff faults the ALJ for citing the ability to "cut lawns" as of 2012, the ALJ did not err in finding that the admission undermined Dr. Wallace's finding that Plaintiff was incapable of standing or walking for more than 20 minutes at a stretch (Tr. 421). *See Cutlip v. HSS*, 25 F.3d 284, 287 (6th Cir.1994)(ALJ did not err in concluding that treating disability opinions were undermined by claimant's self-reported activities). Moreover, while Plaintiff argues that the condition of COPD will likely worsen with time, the ALJ aptly noted that Plaintiff's pulmonary functioning improved between February to June, 2013 (Tr. 2016).

Plaintiff's related argument that the ALJ failed to acknowledge the import of the pulmonary testing and x-rays performed in 2013 is defeated by the ALJ's thorough discussion of the 2013 records (Tr. 22-23). The ALJ noted that the allegations of disabling symptomology were further undermined by Plaintiff's denial of pain, "normal breath sounds," and a normal gait (Tr. 22-23). She noted that Plaintiff's blood pressure was well controlled with medication as of April, 2013 (Tr. 23).

Moreover, the ALJ did not err by adopting the findings of a consultative examiner over Dr. Wallace's treating opinion. "The 'substantial evidence' standard, according to which a district court reviews decisions by the Commissioner, does not permit the court to resolve conflicts in evidence." *DeLong v. Commissioner of Social Security*, 748 F.3d 723, 726 (6th Cir. 2014)(rejecting claimant's claim of error in adoption of consultative finding over a conflicting treating opinion)(*citing Ulman v. Commissioner of Social Security*, 693

-16-

F.3d 709, 713 (6th Cir.2012)). After explaining his reasons for declining to give Dr. Wallace's opinion significant weight, ALJ Beeby discussed the consultative sources (Tr. 26). He noted that Dr. Higgin's December, 2012 restriction to sedentary work stood at odds with the examination records noting Plaintiff's report that he could lift 10 pounds repetitively, stand for 45 minutes, and sit for up to one hour at a stretch (Tr. 26). The ALJ devoted an entire paragraph to his reasons for adopting Dr. Leveck's August, 2013 findings over Dr. Wallace (less than sedentary) and Dr. Higgin's (sedentary) opinions. He cited Dr. Leveck's findings of a normal gait, good breath sounds, and an unremarkable neurological examination (Tr. 27). Contrary to the argument that the limitations created by COPD were overlooked, the ALJ devoted an entire paragraph to discussion of the condition, noting that Plaintiff did not use an inhaler or other medication and that pulmonary testing showed that the condition improved over the first half of 2013 (Tr. 27).

Because the ALJ's rejection of Dr. Wallace's assessment is well explained and well supported, a remand is not warranted.

**B. The Step Three Determination**

Here, Plaintiff argues that his joint problems directed a finding of disability at Step Three of the sequential analysis under Listing 1.02. *Plaintiff's Brief* at 11.

At Step Three of the administrative sequence, "[a] Claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled [ ] and entitled to benefits." *Reynolds v. Commissioner of Social Security*, 424 Fed.Appx. 411, 414, 2011

WL 1228165, *2 (6th Cir. April 1, 2011); 20 C.F.R. §§ 404.1520(a)(4)(iii). "Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.' " *Id.* (*citing* 20 C.F.R. § 404.1525(a)).

Listing 1.02, Major dysfunction of a joint(s), is characterized by "gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02. To show disability under Listing 1.02A, the joint dysfunction must be accompanied by "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B(2)." For claims of disability under this listing, "medical signs or laboratory findings must show the existence of a medically determinable impairment(s) that could reasonably be expected to produce the pain or other symptoms." § 1.00B(2)(d).

This argument is not well taken. Plaintiff does not cite any evidence showing that he is unable to "ambulate effectively" as defined by the listings. Under § 1.00B(2), "[i]neffective ambulation is defined generally as having insufficient lower extremity functioning [ ] to permit independent ambulation without the use of a hand-held assistive

-18-

device(s) that limits the functioning of both upper extremities." None of the treating or consultative records suggests that Plaintiff required the use of an assistive device, much less one requiring the use of both upper extremities.

Plaintiff also cites Listing 1.02B but does not provide any argument that he experienced "[i]nvolvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B(2)(C)." Plaintiff cannot show that he experiences the "inability to perform fine and gross movements" as defined by 1.00B(2)(C):

> Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. . . . [E]xamples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

20 C.F.R. Pt. 404, Subpt. P, App. 1. Aside from the absence of medical evidence of "extreme" loss of upper extremity function, Plaintiff's testimony that he was able to take care of his own personal needs, shop, drive, and smoke cigarettes stands at odds with a finding of disability due to the "inability to perform fine and gross movements effectively." *Id.*

As such, Plaintiff's argument that he meets Listing 1.02 should be rejected.

-19-

### C.  The Vocational Testimony

Plaintiff argues that the ALJ's "hypothetical question" to the VE did not reflect his full degree of physical limitation.  *Plaintiff's Brief* at 12-14.  He contends that the failure to incorporate Dr. Wallace's disability level restrictions in the question invalidates the VE's responding testimony that he could perform both his past relevant work as a plant manager and a limited range of "other" exertionally light work.  *Id.*

Plaintiff is correct that a vocational testimony made in response to a hypothetical question constitutes substantial evidence only if it accurately portrays the individual's relevant impairments.  *Howard v. Commissioner of Social Security*, 276 F.3d 235, 239 (6th Cir. 2002)(*citing Varley v. HSS*, 820 F.2d 777, 779 (6th Cir. 1987).  While the Sixth Circuit has rejected the proposition that all of the claimant's maladies must be listed verbatim, "[t]he hypothetical question ... should include an accurate portrayal of [a claimant's] individual physical and mental impairments." *Webb v. Commissioner of Social Security,* 368 F.3d 629, 632 (6th Cir. 2004).

 Plaintiff's argument that the ALJ erred by declining to include Dr. Wallace's findings in the hypothetical question forming the basis of the RFC does not provide grounds for remand.  The ALJ noted that Dr. Wallace's opinion that Plaintiff was unable to perform even sedentary work was contradicted by the treating records and findings by both the consultative and non-examining sources (Tr. 25-27).  *See* **V.A.***, above.*  Without more, Dr. Leveck's August, 2013 finding that Plaintiff was capable of a range of exertionally light work

-20-

constitutes substantial evidence in support of the ALJ's choice of hypothetical limitations. Having adequately explained his reasons for discounting Dr. Wallace's disability assessment, the ALJ was not required to include her findings in the hypothetical question. *See Stanley v. Secretary of HSS*, 39 F.3d 115, 118–119 (6th Cir.1994)(ALJ not obliged to credit rejected claims in question to VE).

I note in closing that my recommendation to uphold the non-disability finding should not be read to trivialize Plaintiff's claim that he experiences some degree of physical limitation. However, because the ALJ's determination is supported by substantial evidence and is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## VI. CONCLUSION

For these reasons, I recommend that Plaintiff's Motion for Summary Judgment [Docket #17] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and

Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: April 30, 2018

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on April 30, 2018, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen

-22-